**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. 49]**

**I.      INTRODUCTION**

This litigation arises from events that occurred on August 30, 2009 at approximately 10:57p.m., at the Doublz Burgers "drive-thru" in Sante Fe Springs, California. The following are the relevant, operative facts: Defendant Michael Barraza ("Barraza"), an off-duty 22-year-old Deputy Sheriff in the County of Los Angeles Sheriff's Department, was waiting in line for his order; he was operating his personal vehicle. His vehicle was hit by the vehicle that was behind his in the drive-thru line. That vehicle was being operated by Plaintiff, Luis Sandoval ("Plaintiff"). Plaintiff then backed his car up, and moved forward to make contact with Barraza's vehicle a second time. At this point, Barraza stepped out of his vehicle, identified himself as a Deputy Sheriff and placed his badge on the hood of Plaintiff's car. Barraza handed his cell phone to a worker at Doublz Burgers who was in the drive-thru area and instructed him to call 911 and summon law enforcement personnel. Barraza and Plaintiff then engaged in a verbal exchange, the details of which are disputed. In the course of this exchange, when Barraza contends he believed that Plaintiff may have been reaching for a weapon, he fired a shot that struck Plaintiff in the abdomen.

In the present action, Plaintiff alleges that Deputy Barraza's actions constituted an excessive use of force and consequently deprived Plaintiff of his Fourth and Fourteenth Amendment rights. Plaintiff's Third Amended Complaint ("TAC") alleges five causes of action related to this contention: (i) civil rights violations pursuant to 42 U.S.C. § 1983 against Defendants Deputy Barraza and Does 1-10; (ii) civil rights violations pursuant to 42 U.S.C. § 1983 for entity liability against Defendants the County of Los Angeles ("County") and the County of Los Angeles Sheriff's Department ("LASD"); (iii) violations of California Civil Code sections 52 and 52.1 against Defendants Barraza, the County and the LASD; (iv) assault and battery against Defendants Barraza, the County and the LASD; and (v) negligence

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

against Defendants Barraza, the County and the LASD.

Defendants the County of Los Angeles and the County of Los Angeles Sheriff's Department ("Defendants") now seek summary judgment with respect to Plaintiff's second cause of action for entity liability pursuant to 42 U.S.C. § 1983. The Court conducted a hearing on this motion on October 24, 2011, and then took the matter under submission.

For the reasons stated below, the Court GRANTS Defendants' motion.

## II.   DISCUSSION

### A.   Legal Standard for Entity Liability Under Monell

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 692-694 (1978), the Supreme Court held that municipalities are "persons" for purposes of § 1983, and are liable for subjecting a person, or causing a person to be subjected, to a deprivation of constitutional rights. However, municipalities are only liable for their own illegal acts; they are not vicariously liable for their employee's tortious actions. *Id.*; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986); *Bd. Of Com'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Thus, plaintiffs must establish that an "action pursuant to official municipal policy" caused their injury in order to impose § 1983 liability on local governments. *Monell*, 436 U.S. at 691. This means that the "*deliberate* conduct" of the municipality must be the "'moving force' behind the injury alleged." *Bryan County*, 520 U.S. at 404 (italics in original). Municipal liability pursuant to § 1983 can be predicated on a failure to act to preserve a constitutional right, if such policy of inaction evidences a "deliberate indifference" to the protection of that right. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

### B.   Plaintiff's Claims

Plaintiff contends that the County and the LASD's policies, practices and customs amount to deliberate indifference to his civil rights. In particular, his operative complaint contends that the County and the LASD are subject to entity liability on the following grounds: (i) the continuing pattern of insufficient training of the deputies; (ii) the policy, practice and custom of hiring primarily young adult men between the ages of 19 and 25, at a time in their development when their brains have not fully matured; (iii) the policy, practice and custom of assigning these young men to work in the Los Angeles County jail system without sufficient training as to those times when they may encounter members of the public outside the jails; (iv) the policy and practice of not conducting full investigations into shooting incidents by off-duty deputies, ignoring legitimate complaints of excessive force, and manufacturing criminal charges to conceal abuses of authority by off-duty deputies; and (v) the policy, practice and custom of providing lethal weapons to these young deputies.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

**C.     Section 1983 Liability Based on "Deliberate Indifference"**

    1.     <u>Legal Standard</u>

As stated above, a municipality may be liable under § 1983 for failing to act to preserve a constitutional right, but only if such inaction evidences a "deliberate indifference" to the plaintiff's constitutional rights. *City of Canton*, 489 U.S. at 388 ("We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). "Deliberate indifference" occurs when the need for more or different action is "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. This creates a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County*, 520 U.S. at 410. The acts of a single officer are insufficient to establish a policy of "deliberate indifference" on the part of a municipality. *See City of Canton*, 489 U.S. at 390-91.

The Ninth Circuit explained the standard in these terms: "To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (*quoting City of Canton*, 489 U.S. at 389-91).

    2.     <u>Application to the Alleged Policies at Issue in This Matter</u>

        a)     The Alleged Failure to Train

Plaintiff alleges that deputies like Barraza, who are assigned to detention centers rather than to active patrol, receive inadequate training with respect to the use of force, particularly in stressful scenarios that may arise while they are off duty. Plaintiff contends that this failure to train caused Barraza to use excessive force against him as part of the events at issue here. Defendants argue that all deputies, including Barraza, must complete 720 hours of training at the LASD Academy prior to assignment. It is undisputed that Barraza attended the LASD Academy in 2007, where he was trained for 12 hours regarding the use of force and was trained for another 60 hours regarding arrest and control. *See* Lopez Decl., Exs. A & B, Dkt. No. 49-2, Aug. 15, 2011. The detailed curricula for these courses have not been provided as part of the present motion. However, Defendants have shown that the length of the course on excessive force comports with the Peace Officer Standards and Training ("POST") requirements. *See id.*, Ex. B. Through this evidence, Defendant has established that Barraza received training that addresses the use of force that Plaintiff contends was the cause of his loss of rights. In light of this showing and Plaintiff's burden of proof as to the inadequacy of the training as an

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

element of establishing deliberate indifference, a consideration of Plaintiff's competing evidence is necessary. Thus, has Plaintiff submitted admissible evidence sufficient to create a triable issue of fact as to the adequacy of training received by Barraza and other deputies? He has not.

The starting point for the analysis of the evidence proffered by Plaintiff is what it does not include. Thus, there is no expert declaration regarding the inadequacy of the LASD's training.[1] Instead, Plaintiff relies on the "30th Semiannual Report to the Los Angeles County Sheriff's Department" (Sept. 2011) (the "Report"), which was prepared by the Special Counsel of the Police Assessment Resource Center. Frazee Decl., Ex. S, Dkt. No. 79-19, Oct. 12, 2011. The Report focuses on "'state of mind' or 'perception' shootings where deputies perceive, accurately or not, that a suspect may be armed or going for a gun." *Id.* at 213. It generally expresses concern regarding off-duty shootings by deputies, and highlights the fact that "state of mind shootings rose by 50 percent in the last year [*i.e.*, 2010]." *Id.* When evaluating trends in the number of shootings over the last decade, the Report notes that the number of incidents in which a deputy fired at a civilian has fluctuated over the years, with a high number in 2004, a subsequent drop off, and then an increase during 2009 and 2010.[2] *Id.* at 219. The Report also describes the events that gave rise to this litigation, calling the shooting in this matter a case "where the officer or officers might also have chosen not to confront the suspect…."[3] *Id.* at 226. However, the Report contains no specific criticism of Barraza or any mention that this incident was the direct result of insufficient training. Further, the Report concludes that "the LASD did not act unreasonably in finding that most deputy-involved shootings were the result of ambiguous, aggressive actions on the part of suspects immediately preceding a shooting." *Id.* at 227.

---

[1] At oral argument, Plaintiff's counsel asserted that Plaintiff has retained an expert who will be able to opine on this issue. However, no such evidence was presented in response to the instant motion. Nor did Plaintiff seek shelter under FED. R. CIV. P. 56(d), *i.e.*, he did not contend that he was unable to produce such evidence at the time of the filing of the opposition.

[2] "In looking at hit and non-hit shootings of persons, we see significant fluctuations over the years, with a particularly high number of shootings—57—in 2004. The numbers then dropped, but have picked up again in the last two years." Frazee Decl., Ex. S, pg. 219.

[3] The operative paragraph describing the incident at issue here states:

> An off-duty deputy was going through a drive-through window when he was struck from behind by another car. The car then hit his vehicle a second time, and the driver reportedly began yelling in a confrontational manner. The deputy got out of his vehicle to check it and speak to the suspect, who continued to "berate" him, then withdrew a pocket knife and began waving it. The deputy drew his duty weapon and badge, and told the suspect to stay in his car while asking the window attendant to call 911. He also asked another woman to leave the location; she contacted officers from another agency. The confrontation between the two men continued, and the suspect ultimately put one foot outside the car and reached his hands toward his waistband, out of sight. The deputy fired at him, wounding him.

Frazee Decl., Ex. S, pg. 226.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

      This Report, even if deemed an admission by Defendant, does not create a triable issue as to the adequacy of the training of deputies. Instead it is a report in which there is a comment that greater efforts could and likely should be made to reduce the number of off-duty, officer-involved shootings. Moreover, although the Report could be read to provide some evidence that better training could have a salutary effect,[4] this is not sufficient to establish that there has been deliberate indifference on this issue, resulting in off-duty use of force in recent years. Indeed, because the report specifically states that the number of such incidents was on the decline from 2005 through 2008, and the incident involving Plaintiff occurred in 2009, it is not evidence of poor training sufficient to show that there was a need for more or different training that was so obvious prior to the incident in this case that failing to provide such training amounted to deliberate indifference to Plaintiff's constitutional rights. Additionally, although the Report urges the LASD to implement more scenario-based training to reduce shootings based on misperception or fear, the Report does not state that the training already in place is inadequate. The suggestion of possible improvement is not equivalent to demonstrating an existing inadequacy sufficient to meet the deliberate indifference standard.

      On an issue as to which the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986). Then, the burden shifts to the nonmoving party to set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); FED. R. CIV. P. 56(e)(2). Here, for the foregoing reasons, the Report is insufficient to create a genuine issue of material fact for trial. A law enforcement training expert's declaration, in which said expert evaluates the training supplied by the LASD and finds it to be inadequate, can be sufficient to create a genuine issue of material fact as to whether the training amounts to deliberate indifference. *See, e.g.*, *Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir. 2004) (holding that an expert's declaration on the issue of training created "at least a genuine issue as to whether 'self-training' in this context amounted to deliberate indifference"). However, no such declaration has been presented here. Without such evidence, Plaintiff cannot establish that there is a genuine issue of material fact as to the inadequacy of the training provided by the LASD. Similarly, the absence of such evidence means that there is no genuine issue of fact regarding whether compliance with POST protocols is sufficient to establish that there has been adequate training, *i.e.,* the training provided does not support a finding of deliberate indifference. Thus, because Plaintiff has presented no admissible evidence tending to show that LASD training was in fact inadequate, Plaintiff has not met his evidentiary burden.

---

[4] The Report does state that "[m]ore than half of off-duty shootings involved officers with less than three years on the job, indicating that inexperience or a lack of training may be associated with such incidents." Frazee Decl., Ex. S, pg. 220. But this observation framed as a disjunctive is insufficient to create a genuine issue of material fact.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

                b)       The Alleged Practice of Hiring Young Adult Men

Plaintiff contends that the practice of hiring young adult men between the ages of 19 and 25, when their brains allegedly have not fully developed, is a policy that can form the basis for § 1983 *Monell* liability. However, even assuming that such an approach to hiring can be deemed a "policy" for purposes of § 1983 -- and Plaintiff has cited no case that supports such a position -- Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact regarding whether such a policy: (i) would amount to deliberate indifference to his constitutional rights; and (ii) was the "moving force" behind the alleged constitutional deprivation. Indeed, Plaintiff has presented no evidence establishing a direct connection between Barraza's age and his alleged use of excessive force.[5] Moreover, because the hiring of people in this age bracket is common among law enforcement, military and other similar employers, it would defy common sense for this to be a "policy" that could create *Monell* liability. And, Plaintiff has cited no case in which there has been such a finding. Further, this claim is no more than a restatement of the inadequacy of training claim -- because deputies are young people, they need effective training. For all of these reasons, this basis for *Monell* liability fails.

                c)       The Alleged Practice of Hiring Young Men to Work in the Jail System

Plaintiff next contends that the practice of assigning young deputies to work in the jail system is a practice that can form the basis for Plaintiff's § 1983 *Monell* claim. Although it is undisputed that at the time of the incident, Deputy Barraza was assigned to the Twin Towers detention facility, there is no admissible evidence showing that Barraza's placement at the facility was the cause of the alleged constitutional violations. And, once again, Plaintiff cites no case in which there has been a finding that the assignment of law enforcement personnel to a particular position early in their careers can constitute a basis for *Monell* liability. Finally, this is, once again, an assertion about improper training. Thus, it is not reasonable to contend that inexperienced deputies should not be assigned to a jail facility because they will contact members of the public while off-duty. Instead, it is a reiteration of the claim that Barraza and others were not properly trained. In sum, there is no evidence that creates a genuine issue of fact with respect to the claim that the assignment of deputies to a jail facility amounts to a deliberate indifference to Plaintiff's rights. Consequently, this theory of *Monell* liability also fails.

                d)       The Alleged Practice of Failing to Investigate Off-Duty Incidents

Plaintiff also alleges that the LASD has a policy of failing to investigate off-duty incidents and filing unwarranted charges against members of the public to delay disciplinary investigations. Plaintiff contends that this policy proximately caused LASD to file unwarranted charges against him following

---

[5] The closest Plaintiff comes to providing the Court with such evidence is again the Report, and specifically the statement quoted above in note 4. However, an observation that "inexperience *or* lack of training *may* be associated with such incidents" is not equivalent to evidence of a correlation between deputies' brain development at the ages of 19 to 25 and the use of force. Frazee Decl., Ex. S, p. 220 (emphasis added).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

the incident, which deprived him of his constitutional rights. In his statement of facts, Plaintiff does not list any evidence to support this claim, but instead provides general assertions, such as "[t]he investigators submit bogus claims to cover for the deputies [sic] shootings and protect the LA County and the Sheriff's Department." Plaintiff's Statement of Genuine Facts… ("SOF") 24, Dkt. No. 77-1, Oct. 11, 2011. This fact is allegedly supported by the Shonka and Halston depositions, *see id.*; however, those depositions have not been presented to the Court.

The Court may only consider properly presented admissible evidence in evaluating a motion for summary judgment. Because he has failed to produce such evidence showing that there is a genuine issue for trial, and because he will ultimately have the burden of proof on this issue at trial, Plaintiff has not met his evidentiary burden with respect to the alleged policy of failing to investigate off-duty incidents. Thus, Defendant is entitled to summary judgment on this alleged basis for *Monell* liability.

e) The Alleged Policy of Assigning Firearms to Young Deputies

Plaintiff further contends that the LASD has a well-established custom of requiring deputies to carry their personal firearm with them while off duty, without requiring deputies to carry alternative, non-lethal weapons, such as pepper spray. Plaintiff alleges that this policy caused the deprivation of his constitutional rights because it encourages officers to use lethal rather than non-lethal force. According to Plaintiff, this resulted in the application of excessive force to him, with a resulting deprivation of his constitutional rights. And, he contends that policy meant that the same occurred to others.

Defendants have presented a verified copy of the LASD policy regarding the carrying of firearms while off duty, which states that the decision to carry a firearm off duty is "discretionary." Swiss Decl., Ex. C ("3-01/050.75 Firearms and ID Card, COLA 00163"), Dkt. No. 50-1, Aug. 15, 2011. Defendants have also pointed out the lack of evidentiary foundation for Plaintiff's claim that there is a mandatory policy that deputies must carry only lethal, rather than non-lethal, weapons off duty. Plaintiff has produced very limited evidence in response: A portion of the deposition testimony of Deputy Sheriff Michael L. Winter, the person whom the LASD designated as the most knowledgeable regarding deputy training. In this deposition excerpt, Deputy Winter stated that carrying non-lethal weapons such as pepper spray is also discretionary, but that he has "never seen or heard of anybody carrying less lethal items off duty on their person." Frazee Decl., Ex. Y (Winter Depo. 43:8-10), Dkt. No. 79-27, Oct. 12, 2011.

Deputy Winter's statement is evidence that LASD deputies do not have a custom of carrying non-lethal weapons off duty, but no more. Thus, it is not evidence that the LASD has a deliberate, affirmative policy of encouraging deputies to carry only lethal weapons while off duty. Thus, this basis for Plaintiff's claim cannot survive summary judgment.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-03690 JAK (JCGx) | Date | November 9, 2011 |
|---|---|---|---|
| Title | Luis Sandoval, et al. v. County of Los Angeles, et al. | | |

### III. CONCLUSION

Plaintiff has failed to identify, through admissible evidence, specific facts demonstrating that there is a genuine issue for trial with respect to his second cause of action for entity liability under *Monell*. Therefore Defendants' Motion for Partial Summary Judgment is GRANTED.[6]

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |

---

[6] Defendants' objections to Plaintiff's evidence are rendered moot by this decision. The Court need not decide if the evidence presented is admissible because, even if the disputed evidence were properly before the Court in connection with this motion, Plaintiff would, for the reasons stated in this Order, have still failed to establish a genuine issue of material fact for trial with regard to the County's alleged *Monell* liability.